**ANDERSON CO. et al. v. LION PRODUCTS CO., Inc., et al.**

**No. 3727.**

Circuit Court of Appeals, First Circuit.

April 24, 1942.

---

[2] Santee Club v. White, 1 Cir., 87 F. 2d 5.

[3] Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616.

George T. Bean, of New York City, and Fish, Hildreth, Cary & Jenney, of Boston, Mass. (Melvin R. Jenney, of Boston, Mass., and Edgar F. Baumgartner and Kenyon & Kenyon, all of New York City, on the brief), for appellants.

Arthur D. Thomson, of Boston, Mass. (Thomson & Thomson, of Boston, Mass., on the brief), for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The plaintiffs, The Anderson Company and Productive Inventions, Inc., Indiana corporations, brought suit in the district court for the infringement of three patents, namely: Nilson and Prince No. 1,597,999, hereinafter called the Nilson patent, Anderson No. 1,853,715 and Anderson No. 1,950,-588. The defendants, Lion Products Co., Inc., a Massachusetts corporation, and Max Zaiger, a resident of that state, pleaded the defenses of invalidity and non-infringement. The district court held the patents invalid for lack of invention, entered its judgment for the defendants and the plaintiffs have appealed. The plaintiffs have not in their briefs or in the oral argument before us pressed the appeal on the first two patents, and the appeal is now limited to the judgment in so far as it relates to patent No. 1,950,588. Without giving further consideration to them, we affirm the judgment of the district court on patents Nos. 1,597,-999 and 1,853,715.

The plaintiff, Productive Inventions, Inc., is the owner by assignment of patent No. 1,950,588 issued March 13, 1934 to John W. Anderson, and the plaintiff, the Anderson Company, has been since December 1, 1936, and now is the exclusive licensee of the plaintiff, Productive Inventions, Inc., under said patent.

The patent under consideration concerns a windshield wiper consisting of a U-shaped or channel holder with side portions bent or curved outwardly at the outer edges so that the open side of the holder is flared, an enlarged head of single ply, triangular in cross-section, with longitudinally extending arrises or sharp edges, and an integral flexible flange connecting the head portion with the holder. The specification states that this windshield wiper has both the advantages of a single ply and a multi-ply wiper and is particularly efficient under all weather and climatic conditions. It is asserted that water, moisture and snow do not get in and freeze as in the multi-ply heads, and dirt and other elements cannot penetrate between the plies and cause deterioration of the wiper element. It states that the wiper and holder are so constructed that the wiper element is at all times maintained in operative contact with the surface to be wiped and is so supported by the flared edge that it does not at any time lie flat with the glass but has a scraping or cleaning effect as it travels across the windshield.

All five claims are in issue and are as follows:

"1. In a device of the kind described and in combination, a wiper element and holder therefor, said wiper element consisting of an enlarged head portion provided with a flexible body arranged on the head and operating to connect the head to its holder,

said holder consisting of a channel-shaped element having its sides adjacent the closed end spaced a distance substantially equal to the thickness of the body of the wiper element, the outer free edges of the sides of the channel being outwardly flared, the wiper element being so disposed in its holder that a portion of the body constitutes a flexible hinge portion connecting the head and holder which may overlie and contact with the flared over edge of the adjacent channel side when the wiper element is flexed toward that side.

"2. In a device of the kind described and in combination, a single ply wiper element and holder therefor, said wiper element consisting of a head portion of triangular cross-section provided with a flexible body of less thickness than the width of the head portion extending from the base of the head and operative to connect the head to its holder, said holder consisting of a channel-shaped element having its sides adjacent the closed end spaced a distance substantially equal to the thickness of the body of the wiper element, the outer free edges of the sides of the channel being outwardly flared, the wiper element being so disposed in its holder that the shoulders on the underside of the head lie adjacent the free edge of the adjacent channel side when the wiper element is flexed toward and into engagement with that side.

"3. A wiper blade comprising a head which is substantially triangular in cross section, the opposite sides of said head having longitudinally extending arrises, and an integral flexible body extending from the base of the head in a plane substantially perpendicular to said base.

"4. A wiper blade comprising a head which is substantially triangular in cross section, the opposite sides of said head having longitudinally extending arrises, an integral body extending from the base of the head and being positioned within the marginal edges of said base, said body being arranged in a plane substantially perpendicular to said base and being flexibly connected to said head.

"5. A windshield wiper blade comprising a head which is substantially triangular in cross-section, the opposite sides of said head having longitudinally extending arrises, and a body of relatively narrow cross-section connected to said head and extending from the base thereof between the lateral extremities of the head, said body being capable of yielding to permit the lateral move-ment of said head with relation to said body as the head is moved in opposite directions across the surface of a windshield."

The district court held that the flared edges described in plaintiffs' claims 1 and 2 were anticipated by the Nilson patent. In reaching the conclusion that the Nilson patent was invalid, reliance was placed upon the Lane patent No. 948,630 (a window cleaner and holder with a flared edge on one side), Conant No. 1,062,322 (a window cleaner and holder with flared edges) and Green No. 1,397,511 (a windshield cleaner and holder with flared edges). We do not give great emphasis to the latter three patents but in so far as they refer to the flared edges they buttress the holding of invalidity of the claims now under consideration. An examination of the specification and the single claim of the Nilson patent discloses very clearly the idea of flared or curved edges. The improvement there described is the U-shaped holder with edges receding away from each other so that the flexible portion of the head and the curved edges of the holder come into gradual contact instead of the usual abrupt contact found in the operation of holders without flared edges. The same idea of curved edge or edges is found in the patents to which reference has been made. In all of these patents the purpose of the flared edges is to assure the gradual contact of the wiping portion and the holder.

It is strenuously urged by plaintiffs that the lower court failed to perceive the true nature of claims 1 and 2. They do not deny that the principle of flared edges is to be found in the Nilson patent. They contend, however, that what is new in claims 1 and 2 is not the flared edges per se but the co-operation between the flared edges and the enlarged head of triangular cross-section which permits a shoulder of the wiper element to rest against the flared edge of the holder, thus preventing too great a flexing of the head. This they say is a new function. The asserted advantage derived from the cooperation of the head and the flared edges is that the head is always maintained in a proper position, even under abnormal weather conditions, and that the head is more easily reversed on the return stroke of the wiper, with the result that a more efficient cleaning of the windshield is at all times assured. The purpose of the flared edges in the prior patents, they urge, is to prevent the cutting of the wiper blade and that no thought was given in those patents

to the unitary operation of the holder and the wiper element. We do not find that the true import of claims 1 and 2 was misconceived by the lower court. As it said, 36 F. Supp. 474, 478: "They [claims 1 and 2] cover the alleged invention of the curved edges of the holder, already described in the Nilson patent, and *these flared edges performed the same function here."* (Italics supplied.) It seems clear that the argument advanced by plaintiffs was considered and rejected. We are constrained to conclude, as did the district court, that the testimony of plaintiffs' expert concerning the "pressure of the blade on the windshield, frictional resistance, the locus of flexure, angle of flexure, disposition of strain" was merely an explanation of how "the wiper worked as it proceeded across the windshield. It did not aid in revealing any new and useful function performed by the claimed combination." The fact that Anderson saw more clearly or described more adequately the cooperation of the holder and the wiper element does not alter the fact that the same principle is found in operation in the prior patents. No new function was produced by him. Bailey v. Sears, Roebuck & Co., 9 Cir., 1940, 115 F.2d 904, 906 certiorari denied 62 S.Ct. 82, 86 L.Ed. ——.

Claims 1 and 2 were held invalid for the further reason that they claim too much. The lower court held that the enlarged head portion with the flexible body in claim 1 and the head portion of triangular cross-section with the flexible body and the added element of shoulders to stop flexing in claim 2 did not constitute invention. It said that even if it assumed that they were invention, the claims would still be invalid because included within them were the flared edges. Lincoln Engineering Co. v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. Plaintiffs argue that claims 1 and 2 do not fall within the Lincoln Engineering Co. case because, as noted, the cooperation between the flared edges and the head portion of the wiper is a new function. What we have said above disposes of plaintiffs' argument.

Claims 3, 4 and 5 were held invalid for lack of invention. They refer to the wiper blade and flange or body. No reference is made to a holder with flared edges in these claims. While the lower court cited the French patent to Eyquem, No. 589,365 (1925) as disclosing a channel shaped holder "embracing a wiping organ made up of a rubber blade comprising longitudinal ribs and grooves forming arrises as described in claims 3, 4, and 5" and while it cited other patents which have enlarged heads or wiping edges, it did not rely upon them for its conclusion. The court said: "Assuming, and granting, that the Anderson head is better, the same idea is there in Eyquem, and that is enough. If Anderson depended alone upon this feature for patentability, and Eyquem did not precede him, I could not find that substituting several wiping edges in a single head for multi-ply edges, which were old, reflects any uncommon talent. It is display in my opinion of the skill of the calling." We agree with this conclusion.

A mere aggregation of parts and processes already known in the art will not support the grant of monopoly which the patent law gives to inventive genius. A new combination of old elements alone is not patentable, and a mere utilization of what is known in the prior art even though the result is an improvement over what has gone before and even though the finished product is different in shape and form is not invention. Something more is required. Invention cannot be claimed unless the patentee can show by his achievement that spark of ingenuity which distinguishes invention from mere improvement. Cuno Engineering Corporation v. Automatic Devices Corporation, 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. ——; Mantle Lamp Co. v. Aluminum Products Co., 1937, 301 U.S. 544, 57 S.Ct. 837, 81 L.Ed. 1277; Hotchkiss v. Greenwood, 1851, 11 How. 248, 13 L.Ed. 683.

We have carefully examined the record and have found that while the Anderson patent is concededly an improvement over the Nilson and Eyquem patents and while it may be conceded that the single ply blade is an improvement over the multi-ply wiper, the stringent test of invention has not been met.

The plaintiffs rely on cases in which reference is made by the courts to the commercial success of the patented article to prove invention. These cases are not in point. Mere improvement of a product though it meets with popular acceptance as manifested by commercial success is not a substitute for invention. Commercial success can only aid the court in finding patentability when lack of invention is far more doubtful than it is in this case. Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp. et al., 1935, 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005. It is, of course, true that a court looking back may

lose sight of inventive genius because of the simplicity of the finished product. We are satisfied, however, in the case before us, that Anderson, though he may have achieved an improvement in the wiper blade and holder, has not produced anything which merits the protection of the patent law.

Since we have determined that the patent in issue is invalid because of lack of invention, it is unnecessary to consider the question of infringement.

The judgment of the District Court is affirmed, with costs to the appellees.